LUCY J. DYER vs. FITCHBURG RAILROAD COMPANY.

Worcester.   October 5, 1897. — January 8, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Loss of Life — Railroad — Due Care — Action.*

An action cannot be maintained against a railroad corporation for causing the
death, in daylight, of a person employed in its freight yard as a section hand,
who, it not appearing how the accident happened, probably was struck by the
caboose of a local freight train when backing down on the west bound track, so
called, as he was walking either between the rails of that track or so near to the
track as to be hit by the caboose, there being sufficient space between the east
and west bound tracks for him to walk in safety.

TORT, under the employers' liability act, St. 1887, c. 270, for
causing the death of Albert W. Dyer, who was the plaintiff's
husband.   Trial in the Superior Court, before *Gaskill*, J., who
allowed a bill of exceptions, in substance as follows.

Dyer was one of a section gang in the defendant's employ.
The accident occurred on December 15, 1893, in Leominster,
between twenty minutes past and half past one o'clock in
the afternoon.   The gang had just returned from dinner, and
started to do some work at the east end of the freight yard.
The railroad at this place runs nearly north and south.   There
were no yard limits.   At the place of the accident there were
two parallel tracks, one called the east bound track and the
other the west bound track, and a cross-over track between
them.   A car had been derailed on a siding nearly opposite the
car house.   One Ladeau, the boss of the gang, remained there
to see that the car was taken off, and the rest of the gang, in-
cluding Dyer, left the car house and went along the track.
Having attended to the car in question, Ladeau started to join
the gang and met Dyer coming down the tracks on the caboose
of a local freight train, which was moving west on the east bound
track and was about to cross over to the west bound track in
order to allow a passenger train to pass.   Dyer got off the ca-
boose, told Ladeau that he had been sent back for a flag, and
asked him for his keys in order to get the flag from the car

house. Ladeau gave Dyer the keys, and thereupon kept on going east. The local train then came back and crossed over to let a freight train go toward the east. When Ladeau had got about five hundred feet from the point where he met Dyer, his attention was called to something which he "thought was a sheet of brown paper tipping over underneath the cars," but which turned out to be a canvas coat, about one hundred and fifty feet west of where he was standing, and then he saw that it was a man, who proved to be Dyer. He was pulled from under the local freight train, which was then backing on the west bound track toward the east, the four wheels of the caboose having passed over his body, and he was dead or dying when he was pulled out. Ladeau testified as follows: "There was a brakeman on the local, either on the third or fourth car from the end. There was no brakeman on the rear car. I did not see anything as to how Dyer came there. . . . The distance between the east bound and the west bound tracks is about eight or nine feet. There is quite a space between the two tracks. There was room enough, for a man who wanted to run his chances, to walk between the two tracks, even if a train was running on each of the two tracks. He could walk between the two tracks without being hit." Michael Leonard testified that he was one of the gang under Ladeau, and was near the spot where the accident happened, but did not see how it happened, and did not notice where Dyer was hit. David Casey testified that he was a brakeman on the train that struck Dyer; that the train crew was composed of four brakemen and a conductor; that there were about twenty cars on the train; that at the time of the accident he was on the third box car from the rear, and there was no one behind him on the train; that he did not see Dyer when he was struck, but saw him not more than two minutes before that walking between the east bound and west bound tracks towards the east; that the east bound train was coming up, passing by the train the witness was on; and that, at the time Dyer was struck, the two trains were passing by each other.

At the close of the plaintiff's evidence, the defendant asked the judge to rule that there was no evidence to go to the jury. The judge so ruled, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*W. S. B. Hopkins & F. B. Smith,* for the plaintiff.

*G. A. Torrey,* for the defendant.

FIELD, C. J. There was not sufficient evidence of the due, care of the plaintiff's husband. He probably was struck by the caboose of the local freight train when backing down on the west bound track. Precisely how the accident happened does not appear. There was a sufficient space between the east and west bound tracks for Dyer to walk in safety, and no reasons appear why he should have been walking either between the rails of the west bound track or so near to the tracks as to be hit by the caboose. He was a trackman, and the accident occurred between twenty minutes past and half past one o'clock in the afternoon, when it must have been daylight, and it was a part of his duty to take notice of the shifting of trains in the freight yard. *Exceptions overruled.*